1  Daniel Feinberg – CA State Bar No. 135983
   Email: dfeinberg@lewisfeinberg.com
2  Margaret E. Hasselman – CA State Bar No. 228529
   Email: mhasselman@lewisfeinberg.com
3  LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
   1330 Broadway, Suite 1800
4  Oakland, CA 94612
   Telephone: (510) 839-6824
5  Facsimile: (510) 839-7839

6  Attorneys for Plaintiff and the Class

7

8                    IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11  ERIK UDD, individually and on behalf of a        )
12  class of all other persons similarly situated,   )
                                                      )   Case No. CV 04-05080 JW
13                     Plaintiff,                     )
                                                      )
14      vs.                                           )   **NOTICE OF MOTION AND MOTION**
                                                      )   **FOR FINAL APPROVAL OF CLASS**
15  ALAN B. VIDINSKY, DONALD C.                       )   **ACTION SETTLEMENT, AWARD OF**
    LIGHTBODY, ALAN B. VIDINSKY &                     )   **ATTORNEYS' FEES AND COSTS AND**
16  JOANNE K. VIDINSKY 1993 TRUST and                 )   **CLASS REPRESENTATIVE SERVICE**
    VALIN CORPORATION AMENDED                         )   **PAYMENT**
17  EMPLOYEE STOCK OWNERSHIP PLAN                     )
    AND TRUST COMMITTEE,                              )   Date: June 26, 2006
18                                                    )   Time: 9:00 a.m.
                       Defendants.                    )   Place: Courtroom 8, 4th Floor
19  _____

20      **NOTICE IS HEREBY GIVEN** that on June 26, 2006 at 9:00 a.m., or as soon thereafter

21  as the matter may be heard in the Courtroom of the Honorable James Ware, United States

22  District Court for the Northern District of California, located at 280 South First Street, San Jose,

23  California 95113, plaintiff Erik Udd, as representative of the class, will and hereby does move

24  this Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of the

25  proposed Order filed concurrently herewith:

26      (1)    granting final approval of the proposed class action settlement;

27      (2)    entering Final Judgment;

28      (3)    approving the payment of a service payment of $4,000 to class representative Erik

1    Udd;

2    (4)    approving the payment of attorneys' fees in the amount of $195,619.25 and costs

3    in the amount of $22,003.20 by Defendants to Class Counsel.

4    This motion is based upon this Notice of Motion and Motion; the attached executed Settlement

5    Agreement; the Order Granting Preliminary Approval To Proposed Settlement and Certifying

6    Settlement Class; the Declaration of Daniel Feinberg and exhibits thereto, the Declaration of

7    Carole Sylvester, the Declaration of Steven Tindall re Attorneys' Fees, the other records,

8    pleadings, and papers filed in this action; and upon such other documentary and oral evidence or

9    argument as may be presented to the Court at the hearing of this motion.

10

11    DATED: May 26, 2006                Respectfully submitted,

12                                       LEWIS, FEINBERG,
                                         RENAKER & JACSKON, P.C.
13
                             By:    _____
14                                  Daniel Feinberg
                                    Attorneys for Plaintiff and the Class
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. HISTORY AND STATUS OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. TERMS OF THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. THE SETTLEMENT MERITS FINAL APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . 5

V. PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES
   AND COSTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   A.   Plaintiff's Fee Request Is Appropriate Under Ninth Circuit Law. . . . . . . . . . . . 10

        1.   Plaintiff's Request Is Appropriate Under the Percentage-of-the-Fund
             Method Used by the Ninth Circuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.   Plaintiff's Request is Also Appropriate Under the
             Lodestar Method. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   B.   The Hourly Rates Requested Are Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   C.   Plaintiff's Cost Request Is Appropriate Under Ninth Circuit Law. . . . . . . . . . . 15

   D.   Plaintiff's Request for a Service Payment of $4,000 is Appropriate Under
        Ninth Circuit Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Page No.**

**Federal Cases**

Blum v. Stenson, 465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Bogosian v. Gulf Oil Corp., 621 F.Supp. 27 (E.D.Pa.1985) . . . . . . . . . . . . . . . . . . . . . . . . 16

Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 5

Class Plaintiffs v. Jaffe & Schlesinger, 19 F.3d 1306 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . 10

Ellis v. Naval Air Rework Facility, 87 F.R.D. 15 (N.D. Cal. 1980) . . . . . . . . . . . . . . . . . . . . 6, 8

Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240
     (S.D.Ohio 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fleming v. Kemper Nat'l Svcs., 373 F. Supp. 2d 1000 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . 15

Franklin v. Kaypro Corp., 884 F.2d 1222 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 109 F.3d
     602  (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Domestic Air Transportation Antitrust Litigation, 148 FRD 297 (N.D. Ga. 1993) . . . . . . 16

In re Sears Retiree Group Life Ins. Litig., 2002 U.S. Dist. LEXIS 5492 (N.D. Ill. 2002) . . . . . . 11

In re Unisys Corp. Retiree Medical Benefits ERISA Litigation, 886 F.Supp. 455
     (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Washington Public Power Supply Sec. Litig., 19 F.3d 1291 (9th Cir. 1994) . . . . . . . . . . 10

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . 11

M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819 (D. Mass. 1987) . . . . . . 6

Marshall v. Holiday Magic, Inc., 550 F.2d 1173 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . 5

May v. Metro Life Ins. Co., 2005 WL 839291 (N.D. Cal. April 7, 2005) . . . . . . . . . . . . . . . . . 14

Officers for Justice v. Civil Service Commission, 688 F.2d 615 (9th Cir. 1982),
     cert denied, 459 U.S. 1217 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . . . 11

Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . 11

Torrisi v. Tucson Electric Power Co., 8 F. 3d 1370 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 11

United Steelworkers v. Phelps Dodge Corp., 896 F.2d 403 (9th Cir. 1990) . . . . . . . . . . . . . . . 13

Van Bronkhorst v. Safeco Corp., 529 F.2d 943 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Van Vranken v. Atlantic Richfield Company, 901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . 12, 16

Vincent v. Hughs Air West. Inc., 557 F.2d 759 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . 10

Vizcaino v. Microsoft, 290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

**Other Authorities**

Manual for Complex Litigation (Third) (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    **I.    INTRODUCTION.**

3          Plaintiff, on behalf of himself and a class of approximately 200 participants in the Valin

4    Corporation ("Valin") Employee Stock Ownership Plan ("ESOP" or "Plan"), seeks final

5    approval of a proposed settlement of this action, which asserts claims for violations of the

6    Employee Retirement Income Security Act of 1974 ("ERISA").  The proposed Stipulation of

7    Settlement ("Settlement"), attached hereto as Exhibit A to the Declaration of Daniel Feinberg in

8    Support of Final Approval, resolves all the claims of Plaintiff and the proposed Class in

9    exchange for the payment by Defendants to the Plan of an additional 53,327 shares of Valin

10   stock plus $681,139 in interest, payment by Defendants of all costs of settlement administration,

11   Defendants' reimbursement of defense costs advanced by Valin, payment by Defendants of Class

12   Counsel's reasonable attorneys' fees and costs, and removal of the individual Defendants as Plan

13   fiduciaries.

14          The proposed Settlement satisfies all of the criteria for final approval because it is a very

15   favorable outcome for the Class, eliminates the risk and delay of further litigation, and has been

16   positively received by the Class.  The monetary value of the settlement is approximately $3.13

17   million, plus payment of Class Counsel's reasonable attorneys' fees and costs and substantial

18   injunctive relief.  The positive response of the Class to the Settlement confirms that final

19   settlement approval is appropriate.  Since the dissemination of the Settlement Notice to the Class,

20   no Class Members have objected to the proposed Settlement and many Class Members have told

21   Class Counsel that they are very pleased with the result.

22          Plaintiff also seeks payment of Class Counsel's attorneys' fees in the amount of

23   $195,619.25 and costs in the amount of $22,003.20.  Class Counsel seeks payment of their

24   lodestar attorneys' fees, which are far less than 10% of the common fund.  Since Defendants will

25   pay Class Counsel's attorneys' fees and costs and the money will not come out of the common

26   fund, the Settlement's fee-shifting provision is very favorable to the Class.

27   ///

28   ///

1     Finally, Plaintiff seeks a modest class representative service award of $4,000 for Plaintiff

2    Erik Udd. Like the requested payment of attorneys' fees and costs, the service award will be paid

3    by Defendants and will not come out of the common fund.

4     Because this Settlement achieves an outstanding result for the Class, Plaintiff respectfully

5    requests that the Court approve the Settlement as fair, adequate and reasonable, and enter the

6    proposed Order granting final approval of the Settlement, payment of Class Counsel's attorneys'

7    fees and costs, and payment of the class representative service award.

8    **II.    HISTORY AND STATUS OF THE CASE.**

9     Plaintiff originally filed this class action lawsuit on December 1, 2004. Docket No. 1.

10    The Amended Complaint was filed on July 27, 2005. Docket No. 24. The Amended Complaint

11    asserted claims against Vidinsky, the Vidinsky Trust, Lightbody, and the Committee (Vidinsky

12    and the Vidinsky Trust are sometimes herein referred to collectively as the "Vidinsky

13    Defendants") for violations of the Employee Retirement Income Security Act of 1974, as

14    amended ("ERISA"), including a claim for breach of fiduciary duty. The Amended Complaint

15    sought injunctive, declaratory and monetary relief. All of the claims related to the July 12, 2001

16    sale of 77,250 shares of Valin Corporation common stock by the Vidinsky Trust to the Valin

17    Corporation Amended Employee Stock Ownership Plan and Trust (the "ESOP" or "Plan") for

18    total consideration of $6,000,007.50.

19     Valin stock is not publicly traded. An outside valuation firm, American Qualified Plans,

20    prepared a valuation report for the July 12, 2001 transaction. Plaintiff alleges that the valuation

21    was not done properly and that the share price for the transaction was too high. Defendants deny

22    these allegations, and assert that the price established by the valuation and paid by the ESOP for

23    the stock was correct.

24     After conducting extensive discovery and deposing the key witnesses, the parties

25    conducted a Mediation with the Honorable Judge (Ret.) Charles Renfrew on September 16, 2005.

26    With Judge Renfrew's assistance, the parties agreed to the settlement terms described below.

27    The Court granted preliminary approval of the Settlement and certification of the Class on March

28    13, 2006. The Court also approved the Notice of Proposed Settlement, and the Notice has been

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES
[CASE NO. CV 04-05080 JW]                                                      Page 2

1  distributed to Class Members. *See* Declaration of Carole Sylvester, Docket No. 37.  No Class

2  Members have filed objections to the Settlement and the approximately 20 Class Members who

3  have contacted Class Counsel to discuss the Settlement terms have all expressed their satisfaction

4  with the result.  Declaration of Daniel Feinberg in Support of Motion for Final Approval of Class

5  Action Settlement, Attorneys' Fees and Costs, and Class Representative Payment ("Feinberg

6  Declaration") at ¶9.

7  **III.    TERMS OF THE SETTLEMENT.**

8          The terms of the Proposed Settlement are set forth in detail in the parties' Stipulation of

9  Settlement (Exhibit A to the Feinberg Declaration) which is hereby incorporated by reference.

10         The Settlement provides for a settlement class under Fed. R. Civ. P. Rule 23(b)(1) and (2)

11  consisting of all Plan participants or beneficiaries whose Company Stock Accounts in the Plan

12  were credited with additional shares of Valin Corporation common stock as a result of the July

13  12, 2001 transaction.  Excluded from the Class are Defendants Vidinsky and Lightbody.

14         The parties agreed to select an independent appraiser to determine the number of shares

15  of Valin common stock that could have been purchased by the Plan from the Vidinsky Trust at

16  fair market value on July 12, 2001, for total consideration of $6,000,007.50 (the "Lookback

17  Valuation").  After interviewing several candidates, the parties selected Duff & Phelps, LLC ("D

18  & P") to perform the Lookback Valuation.  In performing the Lookback Valuation, D & P was

19  required to consider any and all information that would have been available to an appraiser as of

20  July 12, 2001.  D & P was not permitted to consider any information that was not available as of

21  July 12, 2001.  No other limits were  placed on the information to which D & P had access.

22  Information provided to the appraiser included, but was not limited to, the June 2001 draft

23  budgets, monthly financial statements for April 2001 and May 2001, and permission to interview

24  Valin employees and former employees.  There were no ex parte contacts between D & P and

25  counsel for any party.

26         In its Lookback Valuation report dated January 27, 2006, D & P determined that the Plan

27  could have purchased 130,577 shares of Valin common stock from the Vidinsky Trust at fair

28  market value on July 12, 2001, for $6,000,007.50.  Since the Plan received only 77,250 shares on

1   July 12, 2001, the ESOP will allocate 53,327 additional shares of Valin common stock to Class

2   Members as a result of the Lookback Valuation (plus cash for payment of interest) when this

3   Settlement becomes final.  On February 28, 2006, the ESOP Trust received 18,176 shares of

4   Valin stock from the Vidinsky Trust, and the remaining 35,151 shares from Mr. Vidinsky's

5   ESOP account.

6        The interest payment was calculated at the rate of 6 percent (simple interest) per year.

7   The interest due totals $681,139 through February 28, 2006 – the date that the additional shares

8   were transferred to the ESOP Trust.  The interest payment will be transferred to the ESOP Trust

9   within fourteen (14) days of the Settlement becoming final.

10       In sum, the Settlement provides for:

11  •    The Vidinsky Trust and Mr. Vidinsky's ESOP account have transferred 53,327 additional

12       shares of Valin common stock to the Plan on behalf of the Class Members.  The

13       additional shares represent more than 10 percent of Valin's outstanding shares and will be

14       allocated to Class Members once the Settlement becomes final.  Based upon the

15       Lookback Valuation, the additional 53,327 shares of Valin stock were worth

16       approximately $2.45 million as of the date of the disputed July 2001 transaction – more

17       than 40 percent of the $6 million transaction price.

18  •    The Vidinsky Trust and/or Mr. Vidinsky's ESOP account will transfer $681,139 in cash

19       to the Plan Trust as payment of interest.

20  •    Defendants Vidinsky and Lightbody have been replaced as the Plan's fiduciaries.  The

21       new Plan Committee has been appointed by the Company's Board of Directors and will

22       include at least three people.

23  •    The Vidinsky Defendants will pay Class Counsel's reasonable attorneys' fees and costs.

24  •    The Vidinsky Defendants will reimburse Valin for all costs of defense in this action that

25       Valin paid under the Plan's indemnification provision.

26  •    Defendants will pay $4,000 to Plaintiff for his services as Class Representative.

27  Plaintiff's counsel believes that the proposed Settlement is a fair resolution of contested claims.

28       Plaintiff has asserted claims pursuant to ERISA §409, 29 U.S.C. §1109, which limits

1    recovery to "any losses to the Plan." Thus, the Vidinsky Trust and Mr. Vidinsky's ESOP account

2    have transferred the additional Valin shares to the Plan, and the Plan will then allocate the shares

3    to Class Member accounts in accordance with the terms of the Plan.

4        In consideration for the additional shares and other relief described above, the Class

5    Members will release all claims against the Defendants relating to the July 2001 transaction and

6    any other alleged breach of fiduciary duty prior to the September 16, 2005 Mediation. The

7    Release does *not* include any claims in a shareholder derivative action currently pending in San

8    Francisco County Superior Court, *Shea v. Vidinsky, et al.* (S. F. Superior Court Case No. CGC

9    04-437473).

10       By order dated March 13, 2006, this Court granted preliminary approval of the settlement,

11   certified a Settlement Class, and directed that the Notice of Proposed Settlement be provided to

12   Class Members by mail. Docket No. 35. This notification process was completed by April 3,

13   2006. *See* Declaration of Carole Sylvester. Docket No. 37. No Class Members have filed

14   objections to the proposed Settlement or request for payment of attorneys' fees, costs, and service

15   award. Feinberg Declaration at ¶9.

16   **IV.    THE SETTLEMENT MERITS FINAL APPROVAL.**

17       It is well established that "there is an overriding public interest in settling and quieting

18   litigation," which is "particularly true in class action suits." *Franklin v. Kaypro Corp.*, 884 F.2d

19   1222, 1228 (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

20   1976)). In evaluating whether to approve the proposed settlement of a class action under Rule

21   23(e) of the Federal Rules of Civil Procedure, "the universally applied standard is whether the

22   settlement is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*,

23   955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Service Commission*, 688 F.2d

24   615, 625 (9th Cir. 1982), *cert denied*, 459 U.S. 1217 (1983); *Marshall v. Holiday Magic, Inc.*,

25   550 F.2d 1173, 1178 (9th Cir. 1977).

26       This determination involves balancing a number of factors such as "the strength of the

27   plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of

28   maintaining class action status through the trial; the amount offered in settlement; . . . and the

1  reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625

2  (citations omitted). In making this determination, "the court's intrusion upon what is otherwise a

3  private consensual agreement negotiated between the parties to a lawsuit must be limited to the

4  extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

5  overreaching by, or collusion between, the negotiating parties." *Id.* Instead, the court's role is to

6  ensure that the settlement, "taken as a whole, is fair, reasonable and adequate to all concerned."

7  *Id.*

8      Approval of a proposed settlement does not involve a trial on the merits of the case. *Id.*

9  Nor is it to be "judged against a hypothetical or speculative measure of what *might* have been

10 achieved by the negotiators." *Id.* (citations omitted, emphasis in original). Instead, as this

11 District has explained, the approval of a class action settlement is an implicit determination "that

12 the settlement was the product of good faith negotiations conducted at arm's length by both

13 sides." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). In fact, where

14 there is a finding that a settlement is the product of arm's length negotiations conducted by

15 capable counsel, there is a presumption that the proposed settlement is fair. *See M. Berenson Co.*

16 *v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Manual for Complex*

17 *Litigation* (Third) § 30.41 (1995).

18     There are numerous factors in the record that support the following findings and argue in

19 favor of approval of this settlement agreement:

20     1. The Settlement is an outstanding result for the Class.

21     The Settlement creates a common fund of over $3 million for a Class of about 200

22 members – an average recovery of over $15,000 per Class Member. Significantly, the revised

23 share price is within the range estimated by Plaintiff's expert in his preliminary valuation of

24 Valin stock as of July 12, 2001. Feinberg Declaration at ¶7.

25     The Settlement also provides for payment of Class Counsel's attorneys' fees and costs by

26 Defendants rather than out of the common fund. In addition, the Settlement provides for

27 significant injunctive relief – the individual defendants have been removed from the Plan

28 Committee and the Settlement requires broader membership on the Plan Committee in the future.

1    In short, the Settlement is an outstanding result for the Class.

2    2.  The benefit to the Class of eliminating delay and uncertainty by settling now.

3    Plaintiff has not secured a ruling as to whether the Defendants have breached their

4    fiduciary duties to the Plan.  While Plaintiff believes that the Defendants violated ERISA's

5    fiduciary standards, Defendants have asserted numerous defenses.  Assuming that Plaintiff was

6    successful in proving Defendants' liability under ERISA, the recoverable damages would have

7    been the difference between the July 12, 2001 purchase price and the fair market value of the

8    Valin shares purchased by the Plan from the Vidinsky Trust, plus interest – the same result that

9    Plaintiff has achieved in the Settlement.  By agreeing to have an independent appraiser decide the

10   fair market value for the disputed July 2001 transaction, the parties avoided the need to have the

11   Court decide liability and the amount of any damages, which the Court could determine to be

12   higher or lower than the amount determined by the independent appraiser pursuant to the

13   Settlement.

14   As described above, the Settlement will provide the Plan with a substantial recovery.  The

15   Plan will receive more than 40 percent more Valin stock for the $6 million purchase price than

16   the original July 2001 transaction.  The additional shares represent over 10 percent of all

17   outstanding Valin stock and were worth about $2.45 million as of July 12, 2001.  The Plan will

18   also receive cash of $681,139 as payment of interest, so the total value to the Plan is over $3.13

19   million.  All of the Valin shares and cash received by the Plan will be allocated to the Class

20   members under the terms of the Plan.

21   Finally, the United States Department of Labor has also received notice of the proposed

22   settlement and has not objected to the terms.  Feinberg Declaration at ¶6.

23   3.  The Representative Plaintiff was actively involved in negotiating the proposed

24   settlement.

25   In addition to initiating this action and providing information to counsel, Plaintiff Erik

26   Udd attended the lengthy mediation session conducted in the course of settlement negotiations.

27   Feinberg Declaration at ¶16.  The named plaintiff's decision to authorize this settlement reflects

28   his best judgment as to how to best fulfill the fiduciary obligations that he knowingly owes to the

1    Class Members. A measure of confidence in the fairness, adequacy and reasonableness of the

2    Proposed Settlement can be derived simply from the fact that the named plaintiff is

3    recommending its approval.

4        4. <u>The Proposed Settlement was reached in good faith and was the result of arm's length,</u>

5    <u>serious, informed, and non-collusive negotiations between experienced, knowledgeable counsel</u>

6    <u>who have actively contested this litigation.</u>

7        As discussed above, in order to approve a proposed class action settlement under Rule

8    23(e), a court must find that the settlement is not the product of collusion, but is instead the result

9    of "good faith negotiations conducted at arm's length" by capable, experienced counsel. *Ellis v.*

10   *Naval Rework Facility*, 87 F.R.D. at 18.

11       Here, there is ample basis in the record for such a finding. This Proposed Settlement is

12   the result of lengthy, arms-length negotiations presided over by Judge Renfrew. The mediation

13   was conducted after Plaintiff had received and reviewed thousands of pages of documents in

14   discovery and deposed the key witnesses. Feinberg Declaration at ¶7.

15       5. <u>No objections to the Proposed Settlement have been filed.</u>

16       Class members have had seven (7) weeks to respond to the Notice of Proposed

17   Settlement, and the response to the settlement has been positive. The deadline to file objections

18   to the Settlement was May 18, 2006, as the Notice clearly stated, and no Class Members have

19   filed objections. Feinberg Declaration at ¶9. In addition, nearly 20 Class Members have

20   contacted Class Counsel to discuss the Settlement terms, and all of these Class Members have

21   been pleased with the result. *Id.*

22       Plaintiff believes that the proposed settlement is an excellent result, reached after a

23   significant period of discovery and mediation. The Settlement was reached with considerable

24   assistance from Judge Renfrew. Accordingly, Plaintiff requests that this Court finally approve

25   the Proposed Settlement.

26   ///

27   ///

28   ///

1    **V.    PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND
2          COSTS.**

3          As discussed above, the Settlement provides that the Vidinsky Defendants will pay Class

4    Counsel's reasonable attorneys' fees and costs, and this payment will *not* be deducted from the

5    additional shares and interest received by the Plan.  The Settlement provides that "[t]he amount

6    to be paid as reasonable attorneys' fees will be determined based on hours reasonably expended

7    multiplied by reasonable hourly rates.  The amount to be paid as costs will be the actual

8    reasonable out-of-pocket expenses incurred by Class Counsel."  Settlement § II.B.1.d.[1]

9          As noted above, the Settlement that Class Counsel has obtained on behalf of the Class is

10   an outstanding result given the hurdles Plaintiff faced in this litigation.  An award of attorneys'

11   fees in the amount of $195,619.25 – Class Counsel's lodestar – is warranted here.  *See* Feinberg

12   Declaration at ¶¶17-18 and Exhibit D (attaching counsel's time records and summary of fees).

13         In common fund cases, the Ninth Circuit uses a benchmark of 25 percent for attorneys'

14   fees.  Class Counsel's requested fees are only about six (6) percent of the monetary value of the

15   Settlement.  Moreover, Class Counsel's fees will not come out of the common fund created for

16   the Class, because Defendants will pay them separate from the stock and interest paid to the Plan

17   as a result of the Settlement.  The Class, therefore, will get the best of both worlds:  a significant

18   monetary benefit and injunctive relief obtained for them by attorneys whom they need not pay

19   out of their own pockets.

20         The Ninth Circuit also uses a lodestar-times-multiplier analysis to cross-check the

21   reasonableness of a percentage-of-the-fund award and to award fees in common fund cases.  In

22   this action, such an analysis confirms that an attorneys' fee award of exactly Class Counsel's

23   lodestar, which is all Plaintiff requests, is appropriate.

24         Class Counsel also incurred significant costs, in the amount of $22,003.20, which they

25

26   [1] Any dispute between Plaintiff and Defendants over what amount of attorneys' fees and costs are
     "reasonable" would be submitted to Judge Renfrew pursuant to the terms of the parties'
27   Memorandum of Understanding, which states that disputes over its construction or interpretation
     shall be submitted to Judge Renfrew for resolution.  Memorandum of Understanding (Exhibit B
28   to the Feinberg Declaration) at ¶17.

1    advanced without assurance that these costs would ever be reimbursed. A court award of these

2    costs is warranted here. *See* Feinberg Declaration at ¶¶17-18 and Exhibit D (attaching counsel's

3    cost records).

4         **A.    Plaintiff's Fee Request Is Appropriate Under Ninth Circuit Law.**

5         As discussed below, Plaintiff's request for $195,619.25 in attorneys' fees is appropriate

6    under Ninth Circuit law. This request is supported by both methods used by Ninth Circuit courts

7    in calculating fees: the percentage-of-the-fund method or the lodestar-times-multiplier method.

8    The fee request is appropriate under the percentage-of-the-fund method because Plaintiff is

9    requesting significantly <u>less</u> than the 25 percent benchmark percentage used in the Ninth Circuit

10   in common fund cases. It is also appropriate under the lodestar-times-multiplier method because

11   Plaintiff requests a straight lodestar award, without a multiplier, which is modest in light of the

12   outstanding results achieved here and in comparison with multipliers used in other common fund

13   cases.

14             1.    <u>Plaintiff's Request Is Appropriate Under the Percentage-of-the-Fund</u>

15                   <u>Method Used by the Ninth Circuit.</u>

16        "[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve

17   a fund to which others also have a claim is entitled to recover from the fund the costs of his

18   litigation, including attorneys fees." *Vincent v. Hughs Air West. Inc.*, 557 F.2d 759, 769 (9th Cir.

19   1977); *see also Class Plaintiffs v. Jaffe & Schlesinger*, 19 F.3d 1306, 1308 (9th Cir. 1994). The

20   district court should award a reasonable attorneys' fee, and may use its discretion in whether to

21   apply various approaches, including a lodestar or percentage of fund approach. *See In re*

22   *Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 109 F.3d 602, 607

23   (9th Cir. 1997) ("The district court has discretion to use the lodestar method or the percentage of

24   the fund method in common fund cases. Reasonableness is the goal."); *In re Washington Public*

25   *Power Supply Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (same).

26        The Ninth Circuit has applied the common fund doctrine in ERISA class action litigation.

27   *Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002) (Awarding 28 percent of the common fund

28

1  which resulted in a lodestar multiplier of 3.65).[2]  Under the percentage approach, the

2  "benchmark" in the Ninth Circuit is 25 percent.  *See, e.g., Six Mexican Workers v. Arizona Citrus*

3  *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Altson & Hunt v. Graulty*, 886

4  F.2d 268 (9th Cir. 1989); *Torrisi v. Tucson Electric Power Co.*, 8 F. 3d 1370, 1376-77 (9th Cir.

5  1993).

6      Because Plaintiff has requested only $195,619.25 in attorneys' fees, which is only about

7  six (6) percent of the fund of $3.13 million going to the Class in this case, the request is clearly

8  reasonable under the percentage-of-the-fund method.  Moreover, since Class Counsel's fees will

9  be paid by the Vidinsky Defendants rather than by the Class, the request is particularly fair and

10  reasonable.

11          2.    Plaintiff's Request is Also Appropriate Under the Lodestar Method.

12      Under the "lodestar" method, the court calculates a lodestar by multiplying the reasonable

13  hours expended on the litigation by a reasonable hourly rate; it may then enhance the lodestar

14  with a multiplier to compensate counsel based on a number of factors, including: (1) the time and

15  labor required; (2) the novelty and difficulty of the questions involved in the litigation; (3) the

16  requisite legal skill necessary to achieve the result; (4) whether the fee is fixed or contingent;

17  (5) the amount in controversy and the results obtained; and (6) awards in similar cases.  *See*

18  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino*, 290 F.3d at

19  1051.

20      First, the time and labor required to bring this case to resolution was extensive, as noted

21  above.  As noted in the Declaration submitted herewith by Plaintiff's counsel, Plaintiff's counsel

22  spent 478.75 hours on the case which, charged at their hourly rates, yields a lodestar of

23  $195,619.25.  During the course of this contentious and complex litigation, Plaintiff's counsel

24  prepared for and took depositions of Defendant Vidinsky and of Todd Henry (the valuation

25

26  [2]  Other courts courts have also applied the common fund doctrine to ERISA cases.  *See, e.g., In*
    *re Sears Retiree Group Life Ins. Litig.*, 2002 U.S. Dist. LEXIS 5492 (N.D. Ill. 2002); *In re*
27  *Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 886 F.Supp. 455, 456 (E.D. Pa. 1995)
    ("[t]he fact that this case was brought under ERISA, a fee-shifting statute, does not preclude
28  recovery of attorneys' fees from the common fund that arose from settlement.")

1  consultant who prepared the July 2001 valuation of Valin Corp.), sought and obtained thousands

2  of pages of discovery from defendants and third-party witnesses, reviewed and indexed such

3  documents, worked with an expert consultant to prepare a preliminary valuation analysis, worked

4  with another expert to prepare a preliminary report on liability,  researched numerous valuation

5  issues, participated in the mediation session that ultimately led to the settlement, drafted and

6  revised the settlement documents, interviewed several valuation experts to select an agreed-upon

7  appraiser, and responded to inquiries from class members concerning the litigation both before

8  and after they received notice of the settlement.  In light of the extensive work necessary to bring

9  this case to its resolution, the hours Class Counsel spent on it were reasonable.  Class Counsel's

10  time records are attached to the Feinberg Declaration as Exhibit D.

11         Second, the case involved complex issues of ERISA fiduciary duties and prohibited

12  transactions, and especially complex issues surrounding calculation of damages, if any.  The

13  legal skill necessary to bring this action to such a successful conclusion was considerable.  The

14  case was litigated on behalf of the Defendants by experienced and knowledgeable counsel.

15  Plaintiff had to convince Defendants that they faced substantial exposure, despite the uncertainty

16  in damages calculations discussed above.  In order to do so, Class Counsel needed to use their

17  considerable experience in both ERISA and class action litigation.  As noted in the Declaration

18  of Daniel Feinberg attached hereto, Class Counsel is well versed in both areas.

19         Third, the fees for Class Counsel here were contingent on a successful outcome in the

20  case.  Counsel performed all the work described above without any assurance that they would be

21  paid for it.

22         Fourth, as discussed above, Class Counsel has obtained an outstanding settlement worth

23  over $3.13 million, plus substantial injunctive relief, in spite of the difficulties posed by this

24  action.

25         Finally, with regard to awards in similar cases, as a court in this Circuit has noted,

26  "Multipliers in the three-four range are common in lodestar awards for lengthy and complex class

27  action litigation." *Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294, 298 (N.D. Cal.

28  1995).  Similarly, the *Vizcaino* court noted that the multiplier of 3.65 requested in that case was

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES
[CASE NO. CV 04-05080 JW]                                                                          Page 12

1  within the range of multipliers applied in common fund cases and cited 24 such cases and the

2  multiplier identified therein. *See* 290 F.3d at 1051, n.6. Since Class Counsel here requests no

3  multiplier, but only to be paid their straight lodestar fees and costs, it is clear that the request is

4  reasonable.

5       **B.    The Hourly Rates Requested Are Reasonable.**

6       The hourly rates used in Plaintiff's lodestar calculation are reasonable for a complex class

7  action requiring ERISA expertise. The reasonable hourly rate has been defined as that which is

8  "in line with those prevailing in the community for similar services of lawyers of reasonably

9  comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984);

10  *see also United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990).

11       The relevant communities for determining the prevailing market rate for the services

12  provided in this case are the national communities of ERISA specialists and class action

13  specialists. Feinberg Decaration at ¶8. The hourly rates sought by Class Counsel are well within

14  the prevailing market rates in these communities.

15       Mr. Feinberg did most of the work on behalf of the Class and seeks $495 per hour.

16  Feinberg Declaration at ¶10. In 2006, the Superior Courts for the City and County of San

17  Francisco and Alameda County awarded Mr. Feinberg attorney's fees based on the hourly rate of

18  $495 for work performed in 2004 - 2006. *Senior v. Adecco* (S.F. Sup. Ct. No. CGC-04-431031

19  and N.D. Cal. Case No. C 04-2197 PJH (WDB)) and *Hyatt v. Adecco* (Alameda County Sup. Ct.

20  No. RG05198979). Feinberg Declaration at ¶12 and Exhibit F. The *Senior* and *Hyatt* class

21  actions sought vacation benefits on behalf of Adecco employees. The key issue in both cases

22  was ERISA preemption. Plaintiff Senior was successful in having his case remanded to state

23  court after Adecco removed the action to U.S. District Court based upon alleged ERISA

24  preemption. Feinberg Declaration at ¶12.

25       Other San Francisco-area class action specialists with experience comparable to Mr.

26  Feinberg's charge substantially higher rates than Mr. Feinberg. Declaration of Steven Tindall re

27  Attorneys' Fees ("Tindall Declaration") at ¶3 ("My firm's hourly billing rate for a partner with

28  approximately the same amount of experience as Daniel Feinberg is $700."). Given that

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES
[CASE NO. CV 04-05080 JW]                                                    Page 13

comparable attorneys in Mr. Feinberg's market charge $700 per hour, Mr. Feinberg's rate of $495 per hour is well within the rates "prevailing in the community," *Blum v. Stenson*, 465 U.S. at 895 n.11 .

In *May v. Metro Life Ins. Co.*, 2005 WL 839291, *3 (N.D. Cal. April 7, 2005), the Northern District of California awarded attorneys' fees in an individual ERISA benefit claim at the rates of $395 and $350 per hour for the two attorneys involved in the case. The court based its decision on declarations regarding the prevailing Bay Area market rates for ERISA attorneys, including a 2004 declaration filed by Daniel Feinberg in another case. The court described Mr. Feinberg as "an accomplished litigator and ERISA specialist":

> Mr. Fishleder declares that partner-level ERISA attorneys in the Bay Area charge between $425.00 and $450.00 per hour, junior partners charge $375.00 per hour, and associates' time is billed at $225.00 per hour. Mr. Fishleder also declares that Mr. Baum's "reputation among his peers is for a high level of professional skill and ability." Mr. Feinberg, an accomplished litigator and ERISA specialist, sought attorneys' fees at hourly rates of $450.00 for his time, and $375.00 and $225.00 for two other attorneys, in another action. He declared that he is familiar with the prevailing market rates in the Bay Area and that the rates he sought were within that range. Finally, Mr. Huss declares that he has practiced in the employee benefits area since 1977 and charges hourly rates of between $425.00 and $450.00. Mr. Huss notes that most ERISA defense attorneys typically charge even higher hourly rates.

*Id.* The *May* court concluded that "[t]he declarations demonstrate that partner-level ERISA attorneys in the Bay Area typically seek and obtain fees at an hourly rate in line with that requested by Mr. Baum and Mr. Weems. . . . Neither Mr. Baum nor Mr. Weems has as much professional experience as Mr. Feinberg or Mr. Huss, and they both seek attorneys' fees at lower hourly rates." *Id.* at *4.[3] The rates for Mr. Feinberg and Mr. Huss cited in the *May* decision are from 2004 and therefore lower than the current rates charged by these attorneys, as discussed above and in the Feinberg Declaration and Tindall Declaration.

Additional significant work on this case was performed by Claire Kennedy-Wilkins and Margaret Hasselman, both third-year associates at Lewis, Feinberg, Renaker & Jackson, P.C ("LFRJ"). Feinberg Declaration at ¶¶13-14. For their work, Plaintiff seeks a rate of $295 per hour. Ms. Hasselman has specialized in ERISA fiduciary and other litigation since 2003. *Id.* at

---

[3] The "Mr. Huss" whose declaration was cited by the *May* court is R. Bradford Huss, a shareholder in the firm of Trucker ◆ Huss, counsel for the Vidinsky Defendants in this case.

1    ¶13. On June 1, Ms. Hasselman will speak on "401(k) and Other Fiduciary Litigation" at a

2    meeting of the Western Pension and Benefits Conference. *Id.* Ms. Kennedy-Wilkins worked as

3    a law clerk at LFRJ during law school, then clerked for the Honorable Irma E. Gonzalez of the

4    United States District Court for the Southern District of California before joining the firm as an

5    attorney in 2004, where she specializes in employee benefits litigation. *Id.* at ¶14. Both Ms.

6    Hasselman and Ms. Kennedy-Wilkins have published articles in law reviews. *Id.* at ¶¶13-14.

7         An hourly rate of $295 per hour is in line with rates charged by other San Francisco-area

8    attorneys specializing in class actions with the same amount of experience as Ms. Hasselman and

9    Ms. Kennedy-Wilkins. Tindall Declaration at ¶3. A Los Angeles court recently upheld a rate of

10   $300 for third-year associates for Lieff, Cabraser, Heimann & Bernstein, LLP, a San Francisco

11   class action firm that frequently co-counsels with Class Counsel's firm. *See* Tindall Declaration

12   at ¶4. Also, in *Fleming v. Kemper Nat'l Svcs.*, 373 F. Supp. 2d 1000 (N.D. Cal. 2005), in

13   awarding LFRJ an hourly rate of $225 per hour for a third-year associate, the court cited the same

14   declaration of Mr. Huss that the *May* court cited above. *Fleming*, 373 F. Supp. 2d at 1011. Mr.

15   Huss declared that his firm charges $200-$225 per hour for second-year associates and that those

16   rates are approximately 20 percent below the prevailing rates at large San Francisco firms, which

17   would make large San Francisco firms' rates for second-year associates $240-$270. *See Id.*

18   Therefore, the rate of $295 per hour for Ms. Hasselman and Ms. Kennedy-Wilkins, both third-

19   year associates, is in line with market rates as discussed above.

20        **C.    Plaintiff's Cost Request Is Appropriate Under Ninth Circuit Law.**

21        As mentioned above, the Settlement states that the Vidinsky Defendants will pay the

22   actual, reasonable out-of-pocket expenses incurred by Class Counsel. Class Counsel requests

23   reimbursement of a total of $22,003.20 in costs. The specific costs for which Class Counsel seek

24   reimbursement are identified in the Declaration of Daniel Feinberg as Exhibit D.

25        In light of the complex nature of this action, these costs, which total $22,003.20, are

26   reasonable. In addition to the usual charges in complex class action litigation for photocopies,

27   computer research, postage, and travel, this case also included substantial charges for expert

28   assistance in determining whether the valuation of Valin Corp. for the July 2001 transaction had

1    been properly performed. *See* Feinberg Declaration ¶7, Exhibit D. Other significant necessary

2    charges included payments to the mediator, Judge Renfrew, without whose assistance the case

3    would have been very unlikely to settle.

4        An award of these expenses, which were fronted by the attorneys for the benefit of the

5    Plaintiff Class, is appropriate.

6        **D.    Plaintiff's Request for a Service Payment of $4,000 is Appropriate Under**
         **Ninth Circuit Law.**

7

8        Plaintiff requests a service payment of $4,000 to Class Representative Erik Udd. Plaintiff

9    Udd initiated this litigation and provided Class Counsel with information and documents that

10   were crucial to successfully litigating this case. Mr. Udd has been actively involved in every

11   stage of the litigation. Feinberg Declaration at ¶16.

12       Class action settlement agreements frequently provide for much larger payments to the

13   Class representatives:

14       The Court finds that incentive awards are appropriate to recognize the efforts of
         the representative plaintiffs to obtain recovery for the class. "Modest
15       compensation may sometimes be merited for extra time spent by the class
         representatives in meeting with class members, gathering discovery materials on
16       behalf of the class, and similar efforts." Manual for Complex Litigation § 30.41
         n.86 (2d ed. 1985).

17   *In re Domestic Air Transportation Antitrust Litigation*, 148 FRD 297, 357 (N.D. Ga. 1993). *See*

18   *also Van Vranken, supra*, 901 F.Supp. at 299 (awarding $50,000.00 payments to class

19   representatives); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240,

20   250 (S.D.Ohio 1991) (same); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 32 (E.D.Pa.1985)

21   (awarding $20,000.00 payments to class representatives).

22       Finally, the Class Notice clearly stated that the Settlement Agreement provided for a

23   service payment of $4,000 to Mr. Udd, and no Class Members have objected.

24   **VI.    CONCLUSION.**

25       For the reasons stated above, Plaintiff requests that the Court enter an Order:

26       (1) Granting final approval to the Settlement;

27       (2) Entering final judgment;

28       (3) Approving Plaintiff's request for payment of attorneys' fees in the amount of

1  $195,619.25 and costs in the amount of $22,003.20 by Defendants;

2        (4) Approving a $4,000 service payment to Class Representative Erik Udd.

3

4  Dated: May 26, 2006                   Respectfully submitted,

5                                  LEWIS, FEINBERG,

6                                  RENAKER & JACKSON, P.C.

                  By:

7                                  Daniel Feinberg
                                Attorneys for Plaintiff

8

9  [S:\Cases\Valin ESOP 04-51\Settlement\Final Approval Motion.mwg.wpd]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28